Michael D. Braun (SBN 167416)
**KUZYK LAW, LLP**
2121 Avenue of the Stars, Ste. 800
Los Angeles, California 90067
Telephone: (213) 401-4100
Facsimile: (213) 401-0311
Email: mdb@kuzykclassactions.com

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **BONNIE DAWSON on behalf of herself and all others similarly situated,**<br><br>               **Plaintiff,**<br><br>    **v.**<br><br>**BETTER BOOCH, LLC**<br><br>                   **Defendant.** | **CASE NO.:** '23CV1091 DMS DEB<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Bonnie Dawson ("Plaintiff"), individually and on behalf of herself and all others similarly situated, brings this class action against Defendant Better Booch, LLC ("Better Booch" or "Defendant") and on the basis of personal knowledge, information and belief, and the investigation of counsel, alleges as follows:

## INTRODUCTION

*"The difference between a product that contains a characterizing food ingredient and a product that contains no such ingredient…. is very important to the value of the product and thus to the consuming public."[1]*

1.      This is a proposed class action on behalf of a nationwide class and a California sub-class (collectively, "Class") of consumers seeking redress for Defendant's deceptive practices associated with the advertising, labeling and sale of its kombucha beverages.

2.      Defendant Better Booch manufactures, markets, advertises, and sells a line of organic kombucha beverages ("Beverages" or "Products").

3.      Kombucha is a fermented tea beverage, made by adding a symbiotic culture of bacteria and yeast to a solution of tea and sugar. During the course of the week-long fermentation process, the cultures metabolize the sugar and tea components to render a naturally carbonated beverage, with a slightly sweet-tart flavor, full of healthy components like B vitamins, organic acids, antioxidants, and trace amounts of alcohol.[2]

4.      Kombucha has become one of the fastest growing functional beverage categories in the United States. In 2021, the global kombucha market was valued at

---

[1] Federal Register Vol. 38, No. 231, December 3, 1973

[2] Kombucha Brewers International, *The Kombucha* Industry, Available at https://kombuchabrewers.org/about-us/history-of-kombucha-brewing/ (last visited June 1, 2023)

USD 2.64 billion and expected to grow 15% annually. Known for its healthfulness (e.g., ability to eliminate toxins, boosts energy & immune system, and assist with weight loss) it is marketed specifically to consumers interested in proactively addressing issues of health and well-being.[3]

5.    Although the kombucha market is highly competitive, Better Booch has successfully marketed its Beverages, competing on a narrow band of differentiating qualities, most significant of which are its real, natural and organic ingredients.

6.    Plaintiff was a frequent purchaser of Better Booch Beverages including Golden Pear (see below).  The front label (aka "principal display panel") of the Beverage container characterizes it as "Golden Pear" containing pear, tulsi, turmeric and black pepper.



---

[3] Grand View Research, Kombucha Market Size, Share & Trends Analysis Report By Product (Conventional, Hard), By Distribution Channel (On-trade, Off-trade), By Region, And Segment Forecasts, 2022 – 2030. Available at https://www.grandviewresearch.com/industry-analysis/kombucha-market (last visited June 1, 2023).

7. Despite being characterized as an "pear" beverage, however, the Product does not contain a scintilla of its characterizing ingredient (*i.e.,* pear), but rather derives its flavor exclusively from an ingredient called "natural pear flavor." By characterizing the Product in this manner – *i.e.,* failing to either include its characterizing ingredient (*i.e.,* pear), or alternatively, clearly indicating on the Product's principal display panel that it is a "flavored" beverage, Better Booch has falsely, and misleading labeled its Products, deceived its consumers and violated the law.

8. Throughout the applicable class period, Defendant falsely represented the nature of its kombucha beverages and as a result of this false and misleading labeling, was able to sell these Products to tens of thousands of unsuspecting consumers throughout California and the United States, and to profit thereby.

9. Plaintiff alleges Defendant's conduct is in breach of warranty, violates California's Business and Professions Code § 17200, *et. seq.,* California's Business & Professions Code § l7500, *et. seq.,* California Civil Code § 1750, *et seq.,* and is otherwise grounds for restitution on the basis of quasi-contract/unjust enrichment.

## JURISDICTION AND VENUE

10. Jurisdiction of this Court is proper under 28 U.S.C. § 1332(d)(2). Plaintiff Dawson is a resident of El Cajon, California. Defendant Better Booch is incorporated in California and maintains its principal place of business in Los Angeles. Diversity jurisdiction exists as the amount in controversy exceeds $5,000,000 for the Plaintiff and members of the Class collectively, exclusive of interest and costs, by virtue of the combined purchase prices paid by Plaintiff and members of the putative Class, and the profits reaped by Defendant from their transactions with Plaintiff and the Class, as a direct and proximate result of the wrongful conduct alleged herein, and by virtue of the injunctive and equitable relief

sought. Plaintiff also seeks a nationwide class, wherein class members include those that are citizens of states different from Defendant.

11.     Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391 because a substantial portion of the underlying transactions and events complained of occurred and affected persons and entities located in this judicial district, and Defendant has received substantial compensation from such transactions and business activity in this judicial district.

## **PARTIES**

12.     Plaintiff Bonnie Dawson is a resident of El Cajon, California.

13.     Ms. Dawson purchased a variety of Better Booch Products throughout the applicable class period, including but not limited to the Golden Pear Beverage described herein. The purchases were made at several stores in her surrounding area including Walmart.

14.     Ms. Dawson believed the representations on the Product's principal display panel -- that she was consuming a beverage that contained the fruit depicted by name.

15.     Ms. Dawson believed that Defendant lawfully marketed and sold the Product.

16.     Ms. Dawson relied on Defendant's labelling and was misled thereby.

17.     Ms. Dawson would not have purchased the Product or would have purchased the Product on different terms had she known the truth.

18.     Ms. Dawson was injured in fact and lost money as a result of Defendant's improper conduct.

19.     If Ms. Dawson has occasion to believe that Defendant's marketing and labeling is truthful, non-misleading, and lawful, she would purchase Better Booch beverages in the future.

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

20. Defendant Better Booch, LLC. manufactures, markets and sells a variety of kombucha beverages. The Beverages are sold across a variety of retail segments including supermarkets, convenience stores, drug stores, nutritional stores, and mass merchants. Better Booch is a Delaware corporation that maintains its principal place of business at 2538 E. 53rd Street, Huntington Park, CA 90255.

## GENERAL ALLEGATIONS

21. Better Booch develops, markets, sells and distributes a line of organic kombucha beverages characterized by a variety of fruits, each of which suffer from the same labeling infirmity described herein.[4]

22. Defendant operates in a crowded beverage space among a number of well-established and well-funded competitors.

23. Over the last several years, consumers have increasingly moved towards clean label products, abandoning beverages laden with sugars, flavorings and empty calories in exchange for beverages that provide health benefits.

24. Nothing exemplifies this more than the Kombucha category. Kombucha is a nutrient dense food teeming with living probiotic organisms, healthy acids and trace amounts of nutrients in living form, not synthetically created in a lab. Kombucha's fermentation process result in the formation of antioxidants, vitamins, and minerals with known health benefits, including but not limited to acting as a detoxification agent for metabolic wastes, drugs, and poisons, retardant of foodborne pathogens, and hepatoprotective against environmental pollutants.[5]

---

[4] Class Products include: Golden Pear, Strawberry Lemonade, Moring Glory, Hibiscus Healer, Citrus Sunrise, Guava Cooler, and Cherry Retreat.

[5] McHugh, T at al., Kombucha: How it is Processed? Available at https://research.kombuchabrewers.org/study/kombucha-how-is-it-processed/ (last visited June 1, 2023).

25.    Manufacturers seek to capitalize on these health benefits and compete on offering a clean, healthy, natural product consistent with Kombucha's health halo. Indeed, the top market entrants offer kombuchas with real ingredients. Notwithstanding their choice of formulation, however, all manufacturers are bound by law to provide consumers with truthful and accurate labels thereby enabling them to make informed purchasing decisions.

26.    Despite its legal obligations, however, Better Booch chose to deceptively label its beverages, obfuscating the material fact that they did not contain real fruit, but instead derived their flavor from highly processed, lab-synthesized flavoring packets.

27.    By way of example, the Product's principal display panel undeniably presents "pear" as the beverages' characterizing flavor.

28.    Despite being labeled and characterized as a pear beverage, however, the Product contains none of its characterizing ingredient. Instead, it is flavored by an ingredient described only as "Natural Pear Flavor."  Notably, although characterized as an organic product the "natural pear flavor" is not organic.[6]

29.    Failing to indicate, on the front label, that a product does not contain its characterizing ingredient, but rather, is flavored by lab synthesized chemicals, is deceptive, misleading and in violation of state and common laws designed to protect consumers and to promote consist, honest and transparent labeling.

A.    **Real Ingredients Are Material To Reasonable Consumers**

30.    Over the last decade, "Natural Flavors" have become ubiquitous in food and beverage formulations. According to the Environmental Working Group, which

---

[6] 7 CFR 205.605(a)(12) non-synthetic flavors may be used **only** when organic flavors are not commercially available. All flavors must be derived from organic or non-synthetic sources only and must not be produced using synthetic solvents and carrier systems or any artificial preservative (emphasis added).

rates more than 80,000 foods on their degree of nutrition, ingredient concerns and processing concerns, "Natural Flavor" is the fourth most common ingredient on food labels with only salt, water and sugar mentioned more frequently.[7]

31.    These flavors are used to make packaged food taste fresh, provide tastes and smells that are bolder than comparable natural ingredients, and to be short-lived so that consumers will drink/eat more. In short, the ultimate goal is to make food and beverages addictive so that consumers will prefer and purchase them over competing products.

32.    Despite their name, "natural flavors" are far from being natural. Although derived from a natural source, the finalized flavor that appears as an ingredient in food and beverage products is "a mixture of chemicals obtained by applying physical separation methods to natural sources, a long and complex process… [which] can contain as many as 250 chemically identified constituents, some of which are artificial and synthetic." [8]

---

[7] *Synthetic ingredients in Natural Flavors and Natural Flavors in Artificial Flavors*, Environmental Working Group, available at https://www.ewg.org/foodscores/content/natural-vs-artificial-flavors/. Las visited June 1, 2023.

[8] Is There Really Anything Natural About Natural Flavors?, April 2019, available at https://sites.suffolk.edu/jhbl/2019/04/04/is-there-really-anything-natural-about-natural-flavors/#:~:text=In%20reality%2C%20%E2%80%9Cnatural%20flavors%E2%80%9D,chemicals%20in%20the%20processed%20food (Last visited June 1, 2023); *Synthetic ingredients in Natural Flavors and Natural Flavors in Artificial flavors*, EWG  https://www.ewg.org/foodscores/content/natural-vs-artificial-flavors/#:~:text=Federal%20Food%20and%20Drug%20Administration,juice%2C%20vegetable%20or%20vegetable%20juice%2C.  (Flavor mixtures often include a range of chemicals including: amyl acetate, amyl butyrate, amyl valerate, ethyl butyrate, various aliphatic acid ester, ethyl acetate, ethyl valerate, ethyl isovalerate, ethyl pelargonate, vanillin, lemon essential oil, citral, citronellal, rose absolute, geraniol, pear essential oil, geranium essential oil, aldehyde $C_{10}$, ethyl heptanoate, acetaldehyde, aldehydes $C_{14}$ and $C_{16}$, styralyl acetate, dimethyl benzyl carbinyl acetate, benzyl

33.    Because beverage manufacturers are not required by law to break down the component ingredients that comprise the flavoring packets used in their products, flavorings can, and often do, contain a host of sub-ingredients that consumers would not expect or want in their beverages, and which would be material to their purchasing decision. "On an ingredient label, "natural flavor" can be a sort of black box, enclosing dozens of components, including flavor chemicals, flavor modifiers, and solvents, none of which have to be individually disclosed. Many companies will use additives like propylene glycol when they can disguise them under the benign-sounding catchall "natural flavors"—even if they would reject them as individually listed ingredients." [9]

34.    Many food and drink manufacturers have become more "honest and real about what's going into their food as consumers demand transparency and clean labeling." [10] Indeed, "clean labels with high ethical values are more important than ever, particularly to a growing segment of consumers with special dietary needs,

---

formate, phenyl ethyl isobutyrate, cinnamyl isovalerate, anise essential oil, esters of colophony and benzaldehyde and may contain terpenyl isovalerate, isopropyl isovalerate, citronellyl isovalerate, geranyl isovalerate, benzyl isovalerate, cinnamyl formate, isopropyl valerate, butyl valerate, methyl allyl butyrate and potentially the synthetic ingredients cyclohexyl acetate, allyl butyrate, allyl cyclohexylvalerate, allyl isovalerate and cyclohexyl butyrate.) (Last visited June 1, 2023);

[9] Clean label's dirty little secret, The Counter, (February 1, 2018), available at https://thecounter.org/clean-label-dirty-little-secret/ (last visited June 1, 2023).

[10] The "Natural Flavors" Ingredient Is a Total Lie, The Daily Meal, (June 26, 2017), available at https://www.thedailymeal.com/healthy-eating/natural-flavors-ingredient-total-lie (last visited June 1, 2023).

which means, lab-created artificial and "natural" flavors are not in demand; consumers want real ingredients from nature."[11]

35.    Ultimately, manufacturers have a choice on how to flavor their beverages and will compete for consumers on the basis of those choices. Recognizing the materiality of this distinction (i.e. the difference between real ingredients versus flavorings), however, the law provides strict rules on the labeling products in instances where they have been flavored. The laws ensure consistent labeling among competitive products and are designed to clearly convey the nature of the product, minimize confusion and enable consumers to make informed purchasing decisions.

**B.    The Federal Food Drug & Cosmetic Act**

36.    The Federal Food, Drug & Cosmetic Act ("FDCA") broadly regulates the sale of food and beverages to the consuming public.  21 U.S.C §301.  It was promulgated in significant part to prevent consumer deception and was principally implemented through the creation of a uniform system of labeling on which consumers could rely to make informed purchasing decisions.

37.    By extensively regulating the labeling of foods and beverages, the FDCA and its implementing regulations have identified the words and statements that must or may be included on labeling and have specified how prominently and conspicuously those words and statements must appear. These provisions ensure that statements are presented on labels in such a way as to likely be read and understood by the ordinary person. 21 U.S.C. § 343(f). The FDCA consists of hundreds of sections and subsections, the following of which bear direct relevance to the case at bar.

---

[11] Forbes, *Top Trends Driving Change In The Food Industry*, February 16, 2019, available at https://www.forbes.com/sites/juliabolayanju/2019/02/16/top-trends-driving-change-in-the-food-industry/?sh=302c9e636063 (last visited June 1, 2023).

38.     The FDCA prohibits the misbranding of any food. 21 U.S.C. §331(b).[12] Generally, a  food is misbranded if, among other things, its labeling is false or misleading.  21 U.S.C. § 343.[13]  In addition to this general mandate, the FDCA contains specific rules which manufacturers must follow to ensure their products are properly labeled.  Among them, 21 C.F.R. §101.22, which provides:

(i) If the label, labeling, or advertising of a food makes any direct or indirect representations with respect to the primary recognizable flavor(s), by word, vignette, e.g., depiction of a fruit, or other means, or if for any other reason the manufacturer or distributor of a food wishes to designate the type of flavor in the food other than through the statement of ingredients, such flavor shall be considered the characterizing flavor and shall be declared in the following way:

(1) If the food contains no artificial flavor which simulates, resembles or reinforces the characterizing flavor, the name of the food on the principal display panel or panels of the label shall be accompanied by the common or usual name of the characterizing flavor, e.g., "vanilla", in letters not less than one-half the height of the letters used in the name of the food, except that:

(i) If the food is one that is commonly expected to contain a characterizing food ingredient, e.g., strawberries in "strawberry shortcake", and the food contains natural flavor derived from such ingredient and an amount of characterizing ingredient insufficient to independently characterize the food, or the food contains no such

---

[12] The term food broadly means "articles used for food or drink for man…" 21 U.S.C §321(f) and incorporates beverages such as the Products which are the subject of this litigation.

[13] California's Sherman Food, Drug and Cosmetic Law ("Sherman Law") adopts the FDCA in its entirety (including 21 CFR §101.22) providing, among other things, that "[a]ny food is misbranded if its labeling is false or misleading in any particular." California Health & Safety Code, Article 6, §110660.

ingredient, the name of the characterizing flavor may be immediately preceded by the word "natural" and shall be immediately followed by the word "flavored" in letters not less than one-half the height of the letters in the name of the characterizing flavor, e.g., "natural strawberry flavored shortcake," or "strawberry flavored shortcake."

(ii) If none of the natural flavor used in the food is derived from the product whose flavor is simulated, the food in which the flavor is used shall be labeled either with the flavor of the product from which the flavor is derived or as "artificially flavored."

(iii) If the food contains both a characterizing flavor from the product whose flavor is simulated and other natural flavor which simulates, resembles or reinforces the characterizing flavor, the food shall be labeled in accordance with the introductory text and paragraph (i) (1)(i) of this section and the name of the food shall be immediately followed by the words "with other natural flavor" in letters not less than one-half the height of the letters used in the name of the characterizing flavor.

39.    Class Products each bear a label which make direct representations as to the beverages' primary recognizable flavor(s) either by word and/or word and vignette. Such beverages are commonly expected to contain their characterizing food ingredient. Despite the fact that none of the Class Products contain their characterizing ingredients (i.e., fruits), Better Booch, fails to indicate on their front labels that the beverages are flavored.

40.    To the extent that the "Natural Flavor" in Class Products are derived from their characterizing ingredients (e.g., the natural flavor is derived from a pear), the front label must indicate that it is "Pear Flavored" or "Natural Pear Flavored." To the extent that the "Natural Flavor" is derived from a natural ingredient other than a Product's characterizing ingredient, the front label must indicate that the product is "Artificially Flavored."

41.     Under either scenario, Better Booch has failed to indicate that its Products are flavored – a failure that is in violation of the law and operates as deceit upon consumers.

42.     In January 1973,  the FDA Commissioner published a proposal to revise the requirements contained § 1.12 of the FDCA (now §101.22) with respect to the labeling of flavor contained in food. The FDA solicited public commentary, which it summarized and responded to. Federal Register Vol. 38, No. 231, December 3, 1973 ("38 Fed. Reg. 33267"). Among other things, the FDA made clear that the purpose of these regulations was to provide labeling uniformity among marketplace participants in order to prevent consumer confusion and deception.

43.     Setting forth the general standards applicable to the flavoring regulations, the FDA made clear that although "[i]t is not possible to set out all the circumstances under which a flavor representation is or is not implied,.[a]ny use of a vignette showing a fruit or vegetable clearly constitutes such a representation…. [Moreover,] use of a specific fruit flavor in the food name, such as "pear soda," does constitute such a representation and requires compliance with § 1.12(i)." 38 Fed. Reg. at 33285.

44.     Some stakeholders argued that flavor designations should not be required on the front-of-package, but rather be limited to the statement of ingredients. While the Commissioner agreed that where the manufacturer makes no direct or indirect representation with respect to the flavor of a product other than in the ingredients statement, no designation was necessary on the principal display panel. However, where flavor representations are made on the principal display panel "it is necessary to establish a uniform system of flavor designation to dispel any confusion or misrepresentation."  38 Fed. Reg. 231 at 33286. "The difference between a product that contains a characterizing food ingredient and a product that contains no such ingredient [] is not at all subtle, and is very important to the value of the product and thus to the consuming public." *Id.* at 33285.

45.    The Commissioner also made it clear that when an otherwise "natural flavor [] is not derived from the product whose flavor is simulated…., the product is properly labeled as artificially flavored."  *Id.* at 33285-6.

46.    In 1993 the FDA once again consider amendments to certain regulations of the FDCA, this time those pertaining to the labeling of juice beverages.  The FDA published the proposed amendments for public comment and engaged in a similar discourse as in 1973.  While considering the applicability of Section 101.22 in light of more specific regulations such as Section 102.3, the FDA reconfirmed the function and importance of Section 101.22.

47.    "Both §§ 101.22 and 102.33 are intended to ensure that the label communicates essential information to consumers. These provisions are intended to provide manufacturers with flexibility for labeling products while providing consumers with information that they need to determine the nature of the product. The agency concludes that both kinds of label information discussed here are essential to adequately describe the nature of the product. One type of information informs the consumer when flavoring substances have been added to the product. The other type describes other aspects of the basic nature of the product." 58 FR 2897, *2919. Ultimately, "….a consumer who wants the food because of its particular…. flavor is entitled to examine a label that reveals facts material in light of the representations made…." 58 Fed. Reg. 2897.

## C.    Product Labels Matter

48.    "Food is the most advertised commodity in the United States and food corporations spend on average over $36 billion a year on marketing and advertising."[14]

---

[14] Garavente, Angelina, *How Has The Food Industry Manipulated The Way Consumers Perceive Food And Health?* (2018). Honors College Theses. 173.

49.     Front-of-Package marketing has become ubiquitous in recent years as marketplace competitors vie for consumer attention. It has quickly become the most important part of the food label as consumers attempt to make quick, yet informed purchasing decisions.[15] Indeed, a survey conducted by the FDA determined that 67% of respondents used Front-of-Package labels when making purchasing decisions.[16] This is confirmed by numerous studies which found that consumers often rely on Front-of-Package claims to inform their purchasing decisions, and that Front-of-Package claims can have a "strong impact on their food purchases."[17]

50.     While manufacturers are free to add claims to the Front-of-Package consistent with their obligations under the law, "[e]merging evidence indicates that many labels are misleading in conveying properties of food products and bear a wide

Available at https://digitalcommons.pace.edu/honorscollege_theses/173 (last visited June 1, 2023)

[15] *See, e.g.* Mark Becker, *et al*, *Front of Pack Labels Enhance Attention to Nutrition Information in Novel and Commercial Brands*, Food Policy Volume 56, October 2015, Pages 76-86. Available at https://doi.org/10.1016/j.foodpol.2015.08.001 ("Our results provide clear evidence that FOP labels are more effective at attracting attention than the traditional NFP [Nutrition Facts Panel], and that this advantage is attributable to both the location") (last visited June 1, 2023).

[16] Hawley, K. L., Roberto, C. A., Bragg, M. A., Liu, P. J., Schwartz, M. B., & Brownell, K. D. (2013). *The Science On Front-Of-Package Food Labels*. Public Health Nutrition, 16(3), 430–439. http://doi.org/10.1017/S1368980012000754 (last visited June 1, 2023).

[17] *Healthy Through Presence or Absence, Nature or Science? A Framework for Understanding Front-of-Package Food Claims*, Journal of Public Policy & Marketing 2019, Vol. 38(2) 172-191 available at https://journals.sagepub.com/doi/pdf/10.1177/0743915618824332 (last visited June 1, 2023).

array of confusing messages."[18] This makes compliance with FDCA labeling requirements even more critical in order to provide consumers with recognizable standards and prevent deception.

51.    Not only has Defendant violated the clear letter of the FDCA, but has separately acted to deceive and mislead consumers into purchasing products with qualities and attributes that they simply did not have.

**D.    Competitor Products**

52.    Better Booch is fully aware of its labeling obligations under state and federal laws as well as its overarching duty to honestly inform consumers about the products it is selling.

The FDCA was promulgated in part to prevent consumer deception by creating a uniform system of labeling on which consumers can rely in comparing similar products and making informed purchasing decisions. This is especially important with respect to the use of flavorings which have rapidly become ubiquitous in food formulations. It is critical, therefore, that manufacturers label their products consistently as prescribed law. A review of some competitive product labels illustrates this clearly. By way of example, Humm (Fig. 1), like Better Booch, is a flavored kombucha beverage devoid of its characterizing ingredient. Unlike Better Booch, however, Humm clearly conveys to consumers on its product's principal display panel that its beverages are flavored. Kevita (Fig. 2.) contains both its characterizing ingredient, as well as a flavoring and other natural flavors. However, because it does not contain enough of its characterizing ingredient to independently characterize the

---

[18] Jennifer L. Pomeranz , *Front-of-Package Food and Beverage Labeling New Directions for Research and Regulation*, Am J Prev Med 2011;40(3):382–385 available at https://pubmed.ncbi.nlm.nih.gov/21335274/ (last visited June 1, 2023).

drink, it must, and does, disclose to the consumer on the product's principal display panel that the beverage is flavored. Finally, Health-Ade (Fig.3.) and Synergy (Fig. 4.), like Better Booch, represent characterizing ingredients on their product principal display panels without any qualification thereby conveying to the reasonable consumer that the products actually contain such ingredients. In contrast to Better Booch, however, these beverages actually do contain their characterizing ingredients (e.g., fruit juice or fruit puree) and therefore are not required to include a flavoring qualification on their principal display panels.

1

2  Fig.1

3



Ingredients: Organic Raw Carbonated Kombucha (filtered water, organic green tea, organic black tea, organic cane sugar*, live kombucha cultures), Allulose Syrup**, Monk Fruit**, Natural Flavors**, Probiotic: Bacillus Subtilis, Vitamin B12 (mecobalamin). *Sugar is eliminated during fermentation **From plant-based ingredients

15  Fig.2.



**INGREDIENTS:** SPARKLING WATER, KOMBUCHA CULTURE (FILTERED WATER, BLACK TEA*, GREEN TEA*, NATURAL FLAVOR*)* CANE SUGAR*, FILTERED WATER, MANGO PUREE*, MANGO FLAVOR*, BACILLUS COAGULANS MTCC 5856, GINGER EXTRACT*, BLACK TEA*, BLACK TEA ESSENCE*, CAFFEINE (GREEN COFFEE BEAN EXTRACT)*, LIME EXTRACT*, GREEN TEA*, PURIFIED STEVIA LEAF EXTRACT*. *CERTIFIED ORGANIC INGREDIENT

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

Fig.3.



**Ingredients:
Organic Kombucha*,
Cold-Pressed Ginger
Juice†, Cold-Pressed
Lemon Juice†, Live
Active Cultures
(Bacillus Coagulans
MTCC 5856)**

Fig.4.

INGREDIENTS: GT's Kombucha* (kombucha culture*, black tea*, green tea*, kiwi juice*), mango puree*, and 100% pure love!!!

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

53.    By failing to properly label its products, Better Booch has misled and deceived consumers.

54.    As a result of Defendant's unlawful and deceptive conduct, Plaintiff and members of the Class have been harmed.

## ECONOMIC INJURY

55.    Plaintiff sought to buy products that were lawfully labeled, marketed and sold.

56.    Plaintiff saw and relied on Defendant's misleading labeling of its Products.

57.    Plaintiff believed that the Products purchased contained real fruit.

58.    Plaintiff believed that the Products were lawfully marketed and sold.

59.    In reliance on the claims made by Defendant regarding the qualities of its Products, Plaintiff paid a price premium.

60.    As a result of her reliance on Defendant's misrepresentations, Plaintiff received  Products that lacked the promised ingredient which she reasonably believed the Beverage contained.

61.    Plaintiff received Products that were unlawfully marketed and sold.

62.    Plaintiff lost money and thereby suffered injury as she would not have purchased these Beverages and/or paid as much for them absent the misrepresentation.

63.    Defendant knows that a characterizing ingredient is material to a consumer's purchasing decision.

64.    Plaintiff altered her position to her detriment and suffered damages in an amount equal to the amounts she paid for the Beverages she purchased, and/or in additional amounts attributable to the deception.

65.    By engaging in the false and deceptive conduct alleged herein Defendant reaped, and continues to reap financial benefits in the form of sales and profits from their Products.

66.    Plaintiff would be willing to purchase Better Booch Products again in the future should she be able to rely on Defendant's marketing as truthful and non-deceptive.

## CLASS ACTION ALLEGATIONS

67.    Plaintiff brings this action on behalf of herself and on behalf of classes of all others similarly situated consumers defined as follows:

        a.  **National**: All persons in the United States who purchased Class Products in the United States during the Class Period.

        b.  **California** All persons in California who purchased the Class Products in California during the Class Period.

        c.  **Class Period** is the maximum time allowable as determined by the statute of limitation periods accompanying each cause of action.

68.    Plaintiff brings this Class pursuant to Federal Rule of Civil Procedure 23(a), and 23(b)(1), 23(b)(2), 23(b)(3) and 23(b)(4).

69.    Excluded from the Classes are: (i) Defendant and their employees, principals, affiliated entities, legal representatives, successors and assigns; and (ii) the judges to whom this action is assigned.

70.    Upon information and belief, there are tens of thousands of members of the Class. Therefore, individual joinder of all members of the Class would be impracticable.

71.    There is a well-defined community of interest in the questions of law and fact affecting the parties represented in this action.

72.     Common questions of law or fact exist as to all members of the Class. These questions predominate over the questions affecting only individual Class members. These common legal or factual questions include but are not limited to:

a.   Whether Defendant marketed, packaged, or sold the Class Products to Plaintiff and those similarly situated using false, misleading, or deceptive statements or representations;

b.   Whether Defendant omitted or misrepresented material facts in connection with the sales of its Products;

c.    Whether Defendant participated in and pursued the common course of conduct complained of herein;

d.   Whether Defendant has been unjustly enriched as a result of its unlawful business practices;

e.   Whether Defendant's actions violate the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* (the "UCL");

f.   Whether Defendant's actions violate the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.* (the "FAL");

g.   Whether Defendant's actions violate the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* (the "CLRA");

h.   Whether Defendant should be enjoined from continuing the above-described practices;

i.   Whether Plaintiff and members of the Class are entitled to declaratory relief; and

j.   Whether Defendant should be required to make restitution, disgorge profits, reimburse losses, and pay damages as a result of the above-described practices.

73.     Plaintiff's claims are typical of the claims of the Class, in that Plaintiff was a consumer who purchased Defendant's Product. Plaintiff is no different in any

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

relevant respect from any other Class member who purchased the Products, and the relief sought is common to the Class.

74.    Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the members of the Class she seeks to represent, and she has retained counsel competent and experienced in conducting complex class action litigation. Plaintiff and her counsel will adequately protect the interests of the Class.

75.    A class action is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by each individual Class member likely will be relatively small, especially given the relatively small cost of the Products at issue and the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's conduct. Thus, it would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Moreover, even if members of the Class could afford individual actions, it would still not be preferable to class-wide litigation. Individualized actions present the potential for inconsistent or contradictory judgments. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

76.    In the alternative, the Class may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate preliminary and final equitable relief with respect to each Class.

77.    The requirements for maintaining a class action pursuant to Rule 23(b)(2) are also met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

# FIRST CAUSE OF ACTION
## (Breach of Express Warranty, Cal. Com. Code § 2313)

78.    Plaintiff incorporates each and every allegation contained in the paragraphs above as if rewritten herein.

79.    Defendant made express warranties to Plaintiff and members of the Class that the  Products they purchased contained fruit characterized by name on the Products' principal display panel.

80.    The express warranties made to Plaintiff and members of the Class appear on every Product label. This warranty regarding the nature of the Product marketed by Defendant specifically relates to the goods being purchased and became the basis of the bargain.

81.    Plaintiff and the Class purchased the Products in the belief that they conformed to the express warranties that were made on the Products' labels.

82.    Defendant breached the express warranties made to Plaintiff and members of the Class by failing to supply goods that conformed to the warranties it made. As a result, Plaintiff and members of the Class suffered injury and deserve to be compensated for the damages they suffered.

83.    Plaintiff and the members of the Class paid money for the Products. However, Plaintiff and the members of the Class did not obtain the full value of the advertised Products. If Plaintiff and other members of the Class had known of the true nature of the Products, they would not have purchased them or paid less for them. Accordingly, Plaintiff and members of the Class have suffered injury in fact and lost money or property as a result of Defendant's wrongful conduct.

84.    Plaintiff and the Class are therefore entitled to recover damages, punitive damages, equitable relief such as restitution and disgorgement of profits, and declaratory and injunctive relief.

## SECOND CAUSE OF ACTION
### ("Unlawful" Business Practices in Violation of
### The Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq*.)

85.     Plaintiff incorporates each and every allegation contained in the paragraphs above as if rewritten herein.

86.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code § 17200.

87.     A business act or practice is "unlawful" if it violates any established state or federal law.

88.     Defendant's acts, omissions, misrepresentations, practices, and/or non-disclosures concerning the Products alleged herein, constitute "unlawful" business acts and practices in that they violate the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301, et seq. and its implementing regulations, including, at least, the following sections:

    a. 21 U.S.C. § 343(a), which deems food misbranded when its labeling contains a statement that is false or misleading in any particular;

    b. 21 C.F.R. § 102.5(a)-(d), which prohibits the naming of foods so as to create an erroneous impression about the presence or absence of ingredient(s) or component(s) therein;

    c. 21 CFR §101.22 pertaining to the labeling requirements when products do not contain their characterizing ingredients but instead are flavored;

    d. 21 U.S.C. §§ 331, 333, which prohibits the introduction of misbranded foods into interstate commerce.

89.    Defendant's identical conduct that violates FDCA § 403(a)(1), 21 U.S.C. § 343(a)(1), which declares food misbranded under federal law if its "labeling is false and misleading in any particular," separately violates California's Sherman Food, Drug, and Cosmetic Law. This identical conduct serves as the sole factual basis of each cause of action brought by this Complaint, and Plaintiff does not seek to enforce any of the state law claims to impose any standard of conduct that exceeds that which would violate FDCA.

90.    California's Sherman Food, Drug, and Cosmetic Law ("Sherman Law"), Cal. Health & Safety Code § 109875 *et seq.*, broadly prohibits the misbranding of food. Cal. Health & Safety Code § 110765; *See, also* Cal. Health & Safety Code § 110660 ("Any food is misbranded if its labeling is false or misleading in any particular."). The Sherman Law incorporates all food labeling regulations and any amendments to those regulations adopted pursuant to the Food, Drug, and Cosmetic Act of 1938  as the food labeling regulations of California. Cal. Health & Safety Code §§ 110100(a), 110665, 110670.

91.    Defendant violated and continues to violate the Sherman Law, Article 6, Section 110660 and hence has also violated and continues to violate the "unlawful" prong of the UCL through the false labeling of its Product.

92.    By committing the unlawful acts and practices alleged above, Defendant has engaged, and continues to be engaged, in unlawful business practices within the meaning of California Business and Professions Code §§ 17200, *et seq.*

93.    Through its unlawful acts and practices, Defendant has obtained, and continues to unfairly obtain, money from members of the Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and all members of the Class, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an order is not granted.

### THIRD CAUSE OF ACTION
### ("Unfair" Business Practices in Violation of
### The Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*)

94.     Plaintiff incorporates each and every allegation contained in the paragraphs above as if rewritten herein.

95.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code § 17200.

96.     A business act or practice is "unfair" under the Unfair Competition Law if the reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

97.     Defendant has violated, and continues to violate, the "unfair" prong of the UCL through its misleading description of the Products. The gravity of the harm to members of the Class resulting from such unfair acts and practices outweighs any conceivable reasons, justifications, or motives of Defendant for engaging in such deceptive acts and practices. By committing the acts and practices alleged above, Defendant had engaged, and continued to engage, in unfair business practices within the meaning of California Business and Professions Code §§ 17200, *et seq.*

98.     Through its unfair acts and practices, Defendant had obtained, and continued to unfairly obtain, money from members of the Class. As such, Plaintiff has been injured and requests that this Court cause Defendant to restore this money to Plaintiff and the members of the Class, to disgorge the profits Defendant had made on their Products, and to enjoin Defendant from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

# FOURTH CAUSE OF ACTION
## ("Fraudulent" Business Practices in Violation of
## The Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*)

99.   Plaintiff incorporates each and every allegation contained in the paragraphs above as if rewritten herein.

100.   The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code §17200.

101.   A business act or practice is "fraudulent" under the Unfair Competition Law if it actually deceives or is likely to deceive members of the consuming public.

102.   Defendant's acts and practices of mislabeling their Products in a manner to suggest they principally contained their characterizing/named ingredient.

103.   As a result of the conduct described above, Defendant has been, and will continue to be, unjustly enriched at the expense of Plaintiff and members of the proposed Class. Specifically, Defendant has been unjustly enriched by the profits they have obtained from Plaintiff and the Class from the purchases of their Products.

104.   Through its fraudulent acts and practices, Defendant has improperly obtained, and continues to improperly obtain, money from members of the Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and the Class, to disgorge the profits Defendant has made, and to enjoin Defendant from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

**FIFTH CAUSE OF ACTION**
**(False Advertising in Violation of**
**California Business & Professions Code §§ 17500, *et seq*.)**

105. Plaintiff incorporates each and every allegation contained in the paragraphs above as if rewritten herein.

106. Defendant uses advertising and packaging to sell their Products. Defendant disseminates advertising regarding their Products which by its very nature is deceptive, untrue, or misleading within the meaning of California Business & Professions Code §§17500, *et seq.* because those advertising statements contained on the labels are misleading and likely to deceive, and continue to deceive, members of the putative Class and the general public.

107. In making and disseminating the statements alleged herein, Defendant knew or should have known that the statements were untrue or misleading, and acted in violation of California Business & Professions Code §§17500, *et seq*.

108. The misrepresentations and non-disclosures by Defendant of the material facts detailed above constitute false and misleading advertising and therefore constitute a violation of California Business & Professions Code §§17500, *et seq*.

109. Through its deceptive acts and practices, Defendant has improperly and illegally obtained money from Plaintiff and the members of the Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and the members of the Class, and to enjoin Defendant from continuing to violate California Business & Professions Code §§17500, *et seq.*, as discussed above. Otherwise, Plaintiff and those similarly situated will continue to be harmed by Defendant's false and/or misleading advertising.

110. Pursuant to California Business & Professions Code §17535, Plaintiff seeks an Order of this Court ordering Defendant to fully disclose the true nature of their misrepresentations. Plaintiff additionally requests an Order: (1) requiring Defendant to disgorge their ill-gotten gains, (2) award full restitution of all monies wrongfully

acquired by Defendant and (3), interest and attorneys' fees. Plaintiff and the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

### SIXTH CAUSE OF ACTION
**(Violation of the Consumers Legal Remedies Act,
California Civil Code §§ 1750, *et seq*.)**

111.    Plaintiff incorporates each and every allegation contained in the paragraphs above as if rewritten herein.

112.    This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq*. (the "CLRA").

113.    Plaintiff and each member of the proposed Class are "consumers" within the meaning of Civil Code § 1761(d).

114.    The purchases of the Products by consumers constitute "transactions" within the meaning of Civil Code § 1761(e) and the Products constitute "goods" within the meaning of Civil Code § 1761(a).

115.    Defendant has violated, and continues to violate, the CLRA in at least the following respects:

    a. § 1770(5) pertaining to misrepresentations regarding the characteristics of goods sold—specifying that misleading representations regarding ingredients violate the CLRA;

    b. § 1770(7) pertaining to misrepresentations regarding the standard, quality, or grade of goods sold; and

    c. § 1770(9) pertaining to goods advertised with the intent not to provide what is advertised.

116.    Defendant knew, or should have known, that the labeling of their Products violated consumer protection laws, and that these statements would be relied upon by Plaintiff and the members of the Class.

117.   The representations were made to Plaintiff and all members of the Class. Plaintiff relied on the accuracy of the representations on Defendant's labels which formed a material basis for his decision to purchase the Products. Moreover, based on the very materiality of Defendant's misrepresentations uniformly made on or omitted from their Product labels, reliance may be presumed or inferred for all members of the Class.

118.   Defendant carried out the scheme set forth in this Complaint willfully, wantonly, and with reckless disregard for the interests of Plaintiff and the Class, and as a result, Plaintiff and the Class have suffered an ascertainable loss of money or property.

119.   Plaintiff and the members of the Class request that this Court enjoin Defendant from continuing to engage in the unlawful and deceptive methods, acts and practices alleged above, pursuant to California Civil Code §1780(a)(2). Unless Defendant is permanently enjoined from continuing to engage in such violations of the CLRA, future consumers of Defendant's Products will be damaged by their acts and practices in the same way as have Plaintiff and the members of the proposed Class.

120.   In conjunction with the filing of this Complaint, Plaintiff served a CLRA demand pursuant to Civil Code § 1782, via U.S. Certified  Mail Return Receipt notifying Defendant of the conduct described herein and that such conduct was in violation of particular provisions of Civil Code § 1770. If Defendant fails to properly address and resolve Plaintiff's demand within thirty days of receipt, Plaintiff will amend her Complaint to seek damages under Civil Code § 1780.

## SEVENTH CAUSE OF ACTION
### (Restitution Based On Quasi-Contract/Unjust Enrichment)

121.   Plaintiff incorporates each and every allegation contained in the paragraphs above as if rewritten herein.

122.   Defendant's conduct in enticing Plaintiff and the Class to purchase its Products with false and misleading packaging is unlawful because the statements contained on the Defendant's Product labels are untrue.

123.    Defendant took monies from Plaintiff and the Class for these Products and have been unjustly enriched at the expense of Plaintiff and the Class as result of their unlawful conduct alleged herein, thereby creating a quasi-contractual obligation on Defendant to restore these ill-gotten gains to Plaintiff and the Class.

124.  It is against equity and good conscience to permit Defendant to retain the ill-gotten

benefits received from Plaintiff and Class members.

125.  As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and the Class are entitled to restitution or restitutionary disgorgement in an amount to be proved at trial.

# **PRAYER FOR RELIEF**

THEREFORE, Plaintiff, on behalf of herself and on behalf of the other members of the Class and for the Counts so applicable on behalf of the general public request an award and relief as follows:

A.      An order certifying that this action is properly brought and may be maintained as a class action, that Plaintiff be appointed Class Representative, and Plaintiff's counsel be appointed Lead Counsel for the Class.

B.      Restitution in such amount that Plaintiff and all members of the Class paid to purchase Defendant's Product or restitutionary disgorgement of the profits Defendant obtained from those transactions, for Causes of Action for which they are available.

C.      Compensatory damages for Causes of Action for which they are available.

D.      Other statutory penalties for Causes of Action for which they are available.

E.      Punitive Damages for Causes of Action for which they are available.

F.      A declaration and Order enjoining Defendant from marketing and labeling its Product deceptively, in violation of laws and regulations as specified in this Complaint.

G.      An Order awarding Plaintiff her costs of suit, including reasonable attorneys' fees and pre and post judgment interest.

H.      An Order requiring an accounting for, and imposition of, a constructive trust upon all monies received by Defendant as a result of the unfair, misleading, fraudulent and unlawful conduct alleged herein.

I.      Such other and further relief as may be deemed necessary or appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all causes of action or issues so triable.

DATED: June 12, 2023                    Respectfully submitted,

Michael D. Braun
**KUZYK LAW, LLP**
2121 Avenue of the Stars, Ste. 800
Los Angeles, California 90067
Telephone:   (213) 401-4100
Facsimile:   (213) 401-0311
Email:   mdb@kuzykclassactions.com

*Counsel for Plaintiff*