Michael D. Braun (SBN 167416)
**KUZYK LAW, LLP**
2121 Avenue of the Stars, Ste. 800
Los Angeles, California 90067
Telephone:   (213) 401-4100
Facsimile:   (213) 401-0311
Email:   mdb@kuzykclassactions.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **BONNIE DAWSON on behalf of herself and all others similarly situated,**<br><br>Plaintiff,<br><br>v.<br><br>**BETTER BOOCH, LLC**<br><br>Defendant. | **CASE NO.:** 3:23-cv-01091-DMS (DEB)<br><br>**CLASS ACTION**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**<br><br>Date: November 17, 2023<br>Time: 1:30 p.m.<br>Courtroom: 13A<br><br>Hon. Dana M. Sabraw |

## TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................1

II.    ARGUMENT ...............................................................................2

    A.    STANDARD ON A MOTION TO DISMISS .................................2

    B.    PLAINTIFF SATISFIES PLEADING REQUIREMENTS
        UNDER  FED.R.CIV.P 9(b) ....................................................2

    C.    PLAINTIFF SATSIFIES THE REASONABLE
        CONSUMER STANDARD ......................................................5

    D.    PLAINTIFF'S UCL UNLAWFUL CLAIM IS NOT
        IMPLIEDLY PREEMPTED ..................................................15

    E.    PLAINTIFF'S EQUITABLE CLAIMS SHOULD BE
        SUSTAINED AT THIS JUNCTURE OF THE
        LITIGATION ........................................................................17

    F.    PLAINTIFF IS ENTITLED TO INJUNCTIVE RELIEF ...........20

III.   CONCLUSION ...........................................................................22

# TABLE OF AUTHORITIES

**Cases**

*Ablaza v. Sanofi-Aventis United States LLC*, 2023 U.S. Dist. LEXIS 68391
(N.D. Cal. Apr. 13, 2023) ................................................................18

*Allred v. Frito-Lay N. Am., Inc.*, No. 17-CV-1345 JLS (BGS), 2018 U.S.
Dist. LEXIS 37617 (S.D. Cal. Mar. 7, 2018) ...................................6

*Allred v. Kellogg Co.*, 2018 U.S. Dist. LEXIS 38576
(S.D. Cal. Feb. 23, 2018) ................................................................21

*Anderberg v. Hain Celestial Grp., Inc,* 2023 U.S. Dist. LEXIS 14588
(S.D. Cal. Jan. 26, 2023) ................................................................18

*Andino v. Apple, Inc.*, 2021 U.S. Dist. LEXIS 76011
(E.D. Cal. Apr. 20, 2021) ................................................................20

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ...........................................2

*Astiana v. Ben & Jerry's Homemade, Inc.*, 2011 U.S. Dist. LEXIS 57348
(N.D. Cal. May 26, 2011) ..................................................................4

*Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795 (S.D.N.Y. 2021)....................9

*Bonanno v. Thomas, 309 F.2d 320, 322 (9th Cir. 1962)* ...........................................2

*Brown v. Van's Int'l Foods, Inc.*, 2022 U.S. Dist. LEXIS 84477
(N.D. Cal. May 10, 2022) ................................................................16

*Bruton v. Gerber Prods. Co.*, 703 Fed. App'x 468, 471-72 (9th Cir. 2017) .............5

*Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001).......................15, 16

*Campbell v. Freshbev LLC*, 322 F. Supp. 3d 330, 338 (E.D.N.Y. 2018) ..............21

*Cepelak v. HP Inc.*, 2021 U.S. Dist. LEXIS 221360
(N.D. Cal. Nov. 15, 2021) ................................................................18

*Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111 (N.D. Cal. 2010) ...............3

*Chong v. Kind LLC*, 585 F. Supp. 3d 1215 (N.D. Cal. 2022) .................................16

*Cosgrove v. Or. Chai, Inc.*, 520 F. Supp. 3d 562 (S.D.N.Y. 2021).........................9

*Dashnau v. Unilever Mfg. (US), Inc.*, 529 F. Supp. 3d 235
    (S.D.N.Y. 2021)..................................................................................8, 9, 11

*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018) ..................20, 21

*Ebner v. Fresh, Inc.,* 838 F.3d 958 (9th Cir. 2016) .................................................12

*Fernandez v. Atkins Nutritionals, Inc.*, 2018 U.S. Dist. LEXIS 1189
    (S.D. Cal. Jan. 3, 2018) ................................................................................2, 4

*Hadley v. Kellogg Sales Co.*, 2019 U.S. Dist. LEXIS 136791
    (N.D. Cal. Aug. 13, 2019) ...............................................................................6

*Hesano v. Iovate Health Scis., Inc.*, 2014 U.S. Dist. LEXIS 5924
    (S.D. Cal. Jan. 15, 2014) ................................................................................15

*In re 5-Hour Energy Mktg. & Sales Practices Litig.*, 2014 U.S. Dist. LEXIS
    149732 (C.D. Cal. Sep. 4, 2014) .....................................................................3

*In re MacBook Keyboard Litig.*, 2020 U.S. Dist. LEXIS 190508
    (N.D. Cal. Oct. 13, 2020). ..............................................................................18

*In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales*
    *Practices, & Prods. Liability Litig.*, 754 F. Supp. 2d 1145
    (C.D. Cal. 2010) ...............................................................................................3

*Janney v. Mills*, 944 F. Supp. 2d 806 (N.D. Cal. 2013) ...........................................3

*Jeong v. Nexo Fin. LLC*, 2022 U.S. Dist. LEXIS 10089
    (N.D. Cal. Jan 19, 2022)..................................................................................18

*Jeong v. Nexo Fin. LLC*, 2022 U.S. Dist. LEXIS 10089
    (N.D. Cal. Jan. 19, 2022)..................................................................................17

*Khasin v. Hershey Co.*, No. 5:12-CV-01862 EJD, 2012 U.S. Dist. LEXIS
    161300 (N.D. Cal. Nov. 9, 2012) .....................................................................8

*Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496 (Ct. App. 2003) ................ 6

*McGinity v. P&G*, 69 F.4th 1093 (9th Cir. 2023) ...................................................... 12

*Mier v. CVS Pharmacy, Inc.*, 2021 U.S. Dist. LEXIS 76737
    (C.D. Cal. Mar. 22, 2021) .................................................................................. 17

*Moore v. Trader Joe's Co.*, 4 F.4th 874 (9th Cir. 2021) ........................................... 13

*Nacarino v. Chobani, LLC,* 2022 U.S. Dist. LEXIS 20671
    (N.D. Cal. Feb. 4, 2022) .................................................................................... 18

*Nacarino v. Chobani, LLC,* 2021 U.S. Dist. LEXIS 149153
    (N.D. Cal. Aug. 9, 2021) ................................................................................... 20

*Nexus Pharm., Inc. v. Cent. Admixture Pharm. Servs.*, 48 F.4th 1040
    (9th Cir. 2022) ................................................................................................... 16

*Norman v. Gerber Prods. Co.*, 2023 U.S. Dist. LEXIS 3834
    (N.D. Cal. Jan. 6, 2023) .................................................................................... 20

*Perez v. Nidek Co.*, 711 F.3d 1109 (9th Cir. 2013) .................................................. 15

*Pino v. Birch Benders, LLC*, 2022 U.S. Dist. LEXIS 180804
    (N.D. Cal. Oct. 3, 2022) .................................................................................... 17

*Rodriguez v. Target Corp.*, 2022 U.S. Dist. LEXIS 233767
    (S.D.N.Y. Dec. 30, 2022) .................................................................................. 17

*Roffman v. Perfect Bar, LLC*, 2022 U.S. Dist. LEXIS 159762
    (N.D. Cal. Sept. 2, 2022) .................................................................................. 17

*Roffman v. REBBL, Inc.*, 2023 U.S. Dist. LEXIS 16166
    (N.D. Cal. Jan. 31, 2023) .................................................................................. 16

*Ruiz v. Celsius Holdings*, 2021 U.S. Dist. LEXIS 235986
    (S.D. Cal. July 27, 2021) ............................................................................ 14, 21

*Sandoval v. PharmaCare US, Inc.*, 145 F. Supp. 3d 986 (S.D. Cal. 2015) ............. 15

*Sharpe v. A&W Concentrate Company*, 481 F.Supp.3d 94, 104
    (E.D.N.Y. 2020) .................................................................................................. 9

*Silver v. BA Sports Nutrition, LLC*, 2020 U.S. Dist. LEXIS 99320
    (N.D. Cal. June 4, 2020).................................................................6

*Sims v. Campbell Soup Co.*, 2018 U.S. Dist. LEXIS 222535
    (C.D. Cal. Sep. 24, 2018) .............................................................6

*Sinatro v. Barilla Am., Inc.*, 635 F. Supp. 3d 858 (N.D. Cal. 2022) ......................18

*Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020).........................17

*Stacy v. Rederite Otto Danielsen*, 609 F.3d 1033, 1035 (9th Cir. 2010)..................2

*Steele v. Wegmans Food Mkts.*, 472 F. Supp. 3d 47 (S.D.N.Y. 2020).....................8

*Steinberg v. Icelandic Provisions, Inc*, 2022 U.S. Dist. LEXIS 13478
    (N.D. Cal. Jan. 25, 2022).............................................................14

*Swartz v. Dave's Killed Bread, Inc*., 2023 U.S. Dist. LEXIS 41302
    (N.D. Cal. Jan. 9, 2023)...............................................................17

*Trazo v. Nestlé USA, Inc.*, 2013 U.S. Dist. LEXIS 113534
    (N.D. Cal. Aug. 9, 2013) .............................................................15

*Vance v. Church & Dwight Co.*, 2023 U.S. Dist. LEXIS 53980
    (E.D. Cal. Mar. 29, 2023)............................................................20

*Vassigh v. Bai Brands LLC*,  2015 U.S. Dist. LEXIS 90675
    (N.D. Cal. July 13, 2015) ......................................................15, 16

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003)...............................2

*Warren v. Whole Foods Mkt. Cal., Inc.*, 2022 U.S. Dist. LEXIS 120865
    (N.D. Cal. July 8, 2022) ..............................................................18

*Werdebaugh v. Blue Diamond Growers*, No. 12-CV-02724-LHK, 2013 U.S.
    Dist. LEXIS 144178 (N.D. Cal. Oct. 2, 2013) ................................5

*Williams v. Gerber Prods. Co*., 552 F.3d 934, 938 (9th Cir.2008) .................*passim*

*Wynn v. Topco Assocs., LLC*, 2021 U.S. Dist. LEXIS 9714
    (S.D.N.Y. Jan. 19, 2021) ..............................................................9

*Zahora v. Orgain LLC*, 2021 U.S. Dist. LEXIS 213525
(N.D. Ill. Nov. 4, 2021) ...................................................................................9

*Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) ............................................2

## Rules

Fed. R. Civ. P. 8 ...........................................................................................19

Fed. R. Civ. P 12(b)(6) ............................................................................2, 3, 4

Fed. R. Civ. P. 9(b) ..........................................................................................2

## Regulations

21 CFR §101.22 ....................................................................................1, 5, 10

21 U.S.C. § 343-1(a) ......................................................................................15

38 Fed. Reg. 231 ............................................................................................7

38 Fed. Reg. 33,286 .........................................................................................1

Federal Food Drug & Cosmetics Act, 21 U.S.C. §301 ...............................................5

Federal Register Vol. 38, No. 231, December 3, 1973.............................................10

# I.    INTRODUCTION

The facts of this case are straightforward. Better Booch manufactures a line of Kombucha beverages ("Products") that are characterized by specific fruits, (e.g., "Pear"). The fruits are prominently displayed by name on the Products' principal display panel and THEN repeated on that same panel along with the other ingredients, giving consumers the reasonable impression that the Product actually contains that fruit. Despite these representations, however, the Products do not contain *any* of their characterizing fruits and are thereby deceptively and misleadingly labeled.

The law is unequivocal. When a beverage is expected to contain a characterizing ingredient (e.g., fruit), which it does not contain, but rather is flavored, then the name of the characterizing flavor on the principal display panel "shall be immediately followed by the word "flavored." 21 C.F.R. §101.22(i). The underlying objective of the law is equally clear and compelling -- to protect consumers and to ensure that they are able to make informed purchasing decisions.  As the FDA noted, where flavor representations are made on the principal display panel ("PDP"), "it is necessary to establish a uniform system of flavor designation to dispel any confusion or misrepresentation." 38 Fed. Reg. at 33,286. *"The difference between a product that contains a characterizing food ingredient and a product that contains no such ingredient [] is not at all subtle, and is very important to the value of the product and thus to the consuming public." Id*. at 33,285.

Defendant's affirmative misrepresentations, (i.e., that the Products contain a characterizing fruit), and purposeful material omission, (i.e., failure to indicate the Products do not contain the fruit but are actually flavored), form the factual predicate upon which Plaintiff asserts the violation of California consumer protection statutes and claims breach of express warranty.

Defendant contends that no reasonable consumer would be misled by the Products' labels, that certain of Plaintiff's claims are preempted and that her equitable claims should be dismissed because she has adequate remedies at law.  As detailed below, none of these arguments are meritorious and Plaintiff's Amended Complaint should be sustained in its entirety.

## II.   ARGUMENT

### A.   STANDARD ON A MOTION TO DISMISS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests whether the pleadings fail to state a claim upon which relief can be granted. When considering a Rule 12(b)(6) motion, the Court "accept[s] as true facts alleged and draw[s] inferences from them in the light most favorable to the plaintiff." *Stacy v. Rederite Otto Danielsen*, 609 F.3d 1033, 1035 (9th Cir. 2010). "A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[F]or a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Fernandez v. Atkins Nutritionals, Inc.*, 2018 U.S. Dist. LEXIS 1189 (S.D. Cal. Jan. 3, 2018).

### B.   PLAINTIFF SATISFIES PLEADING REQUIREMENTS UNDER FED.R.CIV.P 9(b)

Federal Rule of Civil Procedure 9(b) provides that a party must state with particularity the circumstances constituting fraud or mistake so that a defendant can prepare an adequate answer from the allegations. *Vess v. Ciba-Geigy Corp. USA*, 317

F.3d 1097 (9th Cir. 2003). Accordingly, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Id.* at 1106.[1]

"In a deceptive advertising case, Rule 9(b) requires that the plaintiff(s) identify specific advertisements and promotional materials; allege when the plaintiff(s) were exposed to the materials; and explain how such materials were false or misleading." *Janney v. Mills*, 944 F. Supp. 2d 806, 815 (N.D. Cal. 2013). **Allegations regarding consumer reliance on misleading product labels routinely satisfy the requirements of 9(b).** *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, & Prods. Liability Litig*., 754 F. Supp. 2d 1145, 1172 n.18  (C.D. Cal. 2010) ("Allegations of representations from product labels and statements that, had consumers not been deceived by the labels, they would not have purchased the product, are sufficient to plead under Rule 9(b)"). "Many courts in California have applied a relatively straightforward test for the application of Rule 9(b) to label-based fraud claims. The "who" are the defendants; the "what" are their allegedly misleading claims; the "when" is the proposed class period, during which those claims were made; the "where" is the offending label; and the "how" is the plaintiff's explanation why the defendant's claims are misleading." *In re 5-Hour Energy Mktg. & Sales Practices Litig.*, 2014 U.S. Dist. LEXIS 149732 *44 (C.D. Cal. Sep. 4, 2014); *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111 (N.D. Cal. 2010)(consumers of granola bars satisfied Rule 9(b) by identifying in their complaint the particular statements they allege are misleading, the basis for that contention, where those statements appear on the product packaging, and the relevant time period in which the statements were used). Plaintiff here has similarly satisfied the requirements of 9(b) by alleging:

---

[1] In the event allegations are insufficient to state a claim, a court should grant leave to amend unless amendment would be futile. *See, e.g., Bonanno v. Thomas,* 309 F.2d 320, 322 (9th Cir. 1962).

**Who**: Defendant Better Booch  ¶¶21;[2]

**What**: A label claim wherein Better Booch fails to indicate that its product is flavored, despite the fact it is entirely devoid of its characterizing ingredient. ¶¶22-29;

**When**: Throughout the applicable class periods from stores including Walmart, Vons, and Sprouts.¶13;

**Where**: The principal display panels of Better Booch Product labels. ¶¶6-8;

**How** the statements were misleading: (1) Better Booch misled consumers by failing to properly indicate on the principal display panel that its Products did not contain their characterizing ingredients, but instead were flavored; (2) Plaintiff purchased Better Booch Products reasonably relying on Better Booch's misrepresentations; and (3) Plaintiff were thus deceived by Better Booch's labeling and damaged thereby. See, e.g.,  ¶¶ 7-8, 13-19, 80-127.

This is sufficient to satisfy 9(b). *See, e.g.*, *Astiana v. Ben & Jerry's Homemade, Inc.*, 2011 U.S. Dist. LEXIS 57348 *15-16 (N.D. Cal. May 26, 2011)(finding 9(b) satisfied where plaintiff alleged: (1) the "who" was defendants (2) the "what" was the statement that product was "all natural;" (3) the "when" as "since at least 2006," and "throughout the class period;" (4) the "where" was on the product labels; (5) the "how the statements were misleading" is the allegation that defendants did not disclose that the product contained synthetic ingredients).

"The purposes of Rule 9(b)'s heightened pleading standard are threefold: (1) to provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints as a pretext for the discovery of unknown wrongs; (2) to protect those whose reputation would be harmed as a result of being subject to fraud charges; and (3) to prohibit plaintiffs from unilaterally imposing upon

---

[2] All "¶" references are to Plaintiff's Amended Complaint (Dkt. No. 10).

the court, the parties and society enormous social and economic costs absent some factual basis." *Fernandez v. Atkins Nutritionals, Inc.*, 2018 U.S. Dist. LEXIS 1189 *34 (S.D. Cal. Jan. 3, 2018). "[S]o long as a plaintiff identifies the label claim at issue, where the statement was made, why it was fraudulent, and how it affected the plaintiff, those three purposes stated above are served and 9(b) is satisfied." *Id.* at *35; *Werdebaugh v. Blue Diamond Growers*, 2013 U.S. Dist. LEXIS 144178 *49 (N.D. Cal. Oct. 2, 2013) (Finding plaintiff met the heightened pleading standards of 9(b) because the complaint identifies the regulations that the representations allegedly violated, states why the representations allegedly violate these regulations, and states why a reasonable consumer would be misled by these alleged regulatory violations.)

Plaintiff has satisfied her pleading obligations under Fed.R.Civ.P. 9(b).

## C.   PLAINTIFF SATSIFIES THE REASONABLE CONSUMER STANDARD

Defendant argues that no reasonable consumer could be misled by their Product label. First, they claim that because the Federal Food Drug & Cosmetics Act ("FDCA"), 21 U.S.C. §301 *et.seq*. has no private right of action, it has no bearing on what a reasonable consumer would understand when looking at Defendant's label. Second, the word "pear," according to Defendant, refers to a flavor and not an ingredient. Finally, the representation on the Product's principal display panel is at best ambiguous, thereby imposing upon a reasonable consumer the obligation to look elsewhere on the label (i.e., ingredient list) for clarification.  As detailed below, none of these arguments have merit, and Plaintiff's Amended Complaint should be sustained.

Deceptive labeling claims under the UCL, CLRA, and FAL are generally evaluated by whether a "reasonable consumer" would be likely to be deceived. *Williams v. Gerber Prods. Co*., 552 F.3d 934, 938 (9th Cir.2008).[3]

The reasonable consumer standard requires a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably under the circumstances, could be misled." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 495 (Ct. App. 2003). In general, what a reasonable consumer would believe is rarely an appropriate subject for a motion to dismiss. *Allred v. Frito-Lay N. Am., Inc.*, 2018 U.S. Dist. LEXIS 37617 *15-17 (S.D. Cal. Mar. 7, 2018); *Sims v. Campbell Soup Co.*, 2018 U.S. Dist. LEXIS 222535 *19-20 (C.D. Cal. Sep. 24, 2018)(whether a reasonable consumer would be materially deceived is a question of fact that is not generally appropriate for determination on a motion to dismiss).

Parties agree that the FDCA does not provide a private right of action to consumers. Plaintiff makes clear in her Amended Complaint that she does not seek to enforce provisions of the FDCA and bases her state causes of action independently on the deceptive and misleading nature of Defendant's Product label. It is erroneous, however, to conclude the mandates of the FDCA are therefore irrelevant. For over 80 years, the labeling conventions it has mandated has created a level playing field among marketplace competitors vying for consumer dollars. More importantly, the consistent application of a uniform system of labeling has shaped consumer

---

[3] The reasonable consumer standard does not apply to Plaintiffs' claim under the unlawful prong of the UCL and is not an element of 21 C.F.R. §101.22 nor the Sherman Law which adopts the FDCA in its entirety. See*, Bruton v. Gerber Prods. Co*., 703 Fed. App'x 468, 471-72 (9th Cir. 2017) ("[t]he best reading of California precedent is that the reasonable consumer test is a requirement under the UCL's unlawful prong only when it is an element of the predicate violation"); *Hadley v. Kellogg Sales Co*., 2019 U.S. Dist. LEXIS 136791 (N.D. Cal. Aug. 13, 2019); *Silver v. BA Sports Nutrition, LLC*, 2020 U.S. Dist. LEXIS 99320 (N.D. Cal. June 4, 2020).

understanding with respect to labeling conventions enabling them to make informed purchasing decisions.

Despite Defendant's best efforts to recast Plaintiff's Amended Complaint (Dkt. No. 10) as one about taste, it is not. Rather, this case is about a Product that claimed to have an ingredient, which in truth it did not have. Defendant was under no legal obligation to characterize its Product in this manner, but chose to, because doing so sells.

Labels matter, and nothing matters more than a product's principal display panel which is the first and often only contact with a consumer. In limited space, it conveys the products' statement of identity and what the manufacturer deems most important to differentiate it from other marketplace participants.

It is axiomatic that the overwhelming majority of beverages sold have some sort of flavor. Indeed, it is a critical feature differentiating otherwise like products. The central question in the case at bar is not, however, whether Better Booch's Products have characterizing flavors, but rather, how those flavors are imparted – whether by their characterizing ingredient (i.e., actual pear) or flavors, oils and extractives (i.e., pear flavor). The difference is material to consumers.

Congress understood this more than 80 years ago when it passed the Food Drug & Cosmetic Act to create uniform food labeling conventions and later, *inter alia*, to "establish a uniform system of flavor designation to dispel any confusion or misrepresentation," 38 Fed. Reg. 231 at 33286, noting that "[t]he difference between a product that contains a characterizing food ingredient and a product that contains no such ingredient [] is not at all subtle, and is very important to the value of the product and thus to the consuming public." *Id.* at 33285.

The drafters' concerns were foretelling. With advances in food science, flavorings had come to replace actual ingredients becoming "the fourth most common ingredient on food labels with only salt, water and sugar mentioned more frequently." ¶30.

Over the last several years, consumers have increasingly moved towards clean label products, abandoning beverages laden with sugars, flavorings and empty calories in exchange for beverages that provide health benefits ¶23. Nothing exemplifies this more than Kombucha, a nutrient dense food teeming with living probiotic organisms – not a synthetic amalgam created in a lab. ¶24

While consumers will not reasonably have intimate knowledge of the regulations, they have been its intended beneficiaries for more than 80 years. *Khasin v. Hershey Co.*, 2012 U.S. Dist. LEXIS 161300 (N.D. Cal. Nov. 9, 2012)(rejecting Defendant's argument that Plaintiff would have had to be familiar with FDA regulations in order to plausibly be deceived). The consistent application of a uniform system of labeling has shaped their understanding and expectations. Just as they expect the PDP to accurately and honestly convey the contents of the product by its common or usual name, they have come to understand that such products contain their characterizing ingredients unless otherwise indicated.  This messaging is routinely reinforced by honest competitors. ¶53.  To say reasonable consumers do not rely on these labeling conventions, or they are otherwise immaterial to reasonable consumer's understanding is disingenuous and myopic.

Indeed, the impact of these regulations upon consumer understanding and expectations was acknowledged by the Ninth Circuit in its seminal labeling case *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939-40 (9th Cir. 2008). "We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception. Instead, reasonable consumers expect

that the ingredient list contains more detailed information about the product that confirms other representations on the packaging."[4]

Despite uniform labeling regulations conditioning consumers to reasonably believe that products characterized by ingredients on their principal display panels actually contain such ingredients, Defendant argues that "pear" and other such fruits designate a flavor, not an ingredient, therefore cannot be misleading as Plaintiff contends. Defendant relies heavily on a series of vanilla-flavored product cases that inundated District Courts in New York over a period of 2 years ("Vanilla Cases"). They generally alleged that vanilla products were mislabeled because "reasonable consumers would expect such Product's vanilla flavor to come *exclusively* from real vanilla and, in particular, from real vanilla beans—*without* artificial vanilla flavoring or other flavor enhancers, such as maltol." *Dashnau*, 529 F. Supp. 3d 235, 242. Several of these Courts erroneously concluded that the word "vanilla" on a product's front label "makes a representation about the *flavor* of the product, but does not make a representation about the *source* of the product's vanilla flavor." *Id.* at 243; *Cosgrove v. Or. Chai, Inc.*, 520 F. Supp. 3d 562, 581 (S.D.N.Y. 2021) (concluding that the word "vanilla" on the front of the package "appears to describe a flavor more than an ingredient"). [5]

---

[4] Defendant's case law asserting the  proposition that there is no private right of action under the FDCA are not of import. *See e.g.*,  *Steele v. Wegmans Food Mkts.*, 472 F. Supp. 3d 47 (S.D.N.Y. 2020). Moreover, bald conclusions that reasonable consumers do not incorporate the regulations into their day-to-day marketplace expectations are inconsistent with common sense, case law in this Circuit and are otherwise misinformed. *See e.g., Dashnau v. Unilever Mfg. (US), Inc.*, 529 F. Supp. 3d 235 (S.D.N.Y. 2021).

[5] But cf., *See Sharpe v. A&W Concentrate Company*, 481 F.Supp.3d 94, 104 (E.D.N.Y. 2020) (where plaintiffs alleged that the beverages at issue *never contained any* natural vanilla, the Court could not find as a matter of law that no reasonable consumer would be misled by defendants' labeling of its products and allowed GBL §§ 349 and 350 claims to proceed).

While the allegations made in these cases are nearly identical, the Product labels at issue differed significantly. Some simply stated "vanilla" (*Wynn v. Topco Assocs., LLC*, 2021 U.S. Dist. LEXIS 9714 (S.D.N.Y. Jan. 19, 2021), others stated "vanilla bean flavor" (*Zahora v. Orgain LLC*, 2021 U.S. Dist. LEXIS 213525, at *2 n.2 (N.D. Ill. Nov. 4, 2021)), while others stated  "Natural Vanilla Flavor With Other Natural Flavors" (*Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795 (S.D.N.Y. 2021)), among a host of other variations.

These label variations were generally overlooked by the Vanilla Courts and should have occasioned different results.  For example, a principal display panel acknowledging that the product is "flavored," as in *Zahora* and *Baretto,* is consistent with 21 CFR §101.22. Alleging the products should be labeled otherwise, should have been preempted. Moreover, overtly stating that the product is "flavored," eliminates any reasonable consumer from being misled about the presence the product's characterizing ingredient.  Additionally, unlike the vast majority of product ingredients, vanilla, in all its forms, is highly regulated. The terms "vanilla bean," (21 CFR §169.3), "vanilla extract" (21 CFR §169.175), vanilla flavoring (21 CFR §169.177), vanilla powder (21 CFR §169.179), vanilla-vanillin extract (21 CFR §169.180), vanilla-vanillin flavoring (21 CFR §169.181), are all subject to federal standards of identity dictating not only how they are constituted, but how they are to be represented on product labels. None of these material differences were meaningfully considered in the collective Vanilla decisions which were an understandably more often a generic response to a serial litigator.

At bottom, Defendant here asks the Court to apply the generic conclusion reached by some of those Courts that the term vanilla used on a product label conveys to the reasonable consumer the *flavor* of the product and not the *source* of the product's flavor. Respectfully, this conclusion is simply wrong. First, the holding is illogical because conveying a flavor and origin of a flavor are not mutually exclusive. Second, the holding is flatly contrary to the mandates of 21 C.F.R. §101.22 and is

inconsistent with how consumers have been told to interpret labels for 80 years, ignoring the very purpose of the regulation which acknowledges that *"[t]he difference between a product that contains a characterizing food ingredient and a product that contains no such ingredient.... is very important to the value of the product and thus to the consuming public."* Federal Register Vol. 38, No. 231, December 3, 1973. In arguendo, even if the Court were to conclude these Vanilla Cases were correctly decided, the reasonable consumer inquiry is highly individualized and based on the unique facts of a given case. To that end, the facts of the Vanilla Cases are distinguishable from the case at bar. First, Plaintiff does not allege that "reasonable consumers would expect the Product's flavor to come *exclusively* from a characterizing ingredient without artificial flavoring or other flavor enhancers. *Dashnau v. Unilever Mfg. (US), Inc.*, 529 F. Supp. 3d 235 (S.D.N.Y. 2021). Rather, Plaintiff alleges that Defendant has chosen to characterize its Product with an ingredient it does not have. Plaintiff makes no allegation with respect to additional flavorings or flavor enhancers.  Second, in the Vanilla Cases, the Plaintiffs conceded that the products at issue contained some amount of actual vanilla. *Id.* Here, in contrast, Plaintiff alleges that the Product is entirely devoid of its characterizing ingredient. Third, the Product here is Kombucha, a health-oriented offering typified by clean labeling. The PDP at issue here states in no uncertain term that "pear" is an ingredient. It not only highlights the term "Golden Pear," but to avoid any possible confusion, it repeats it again along with 3 other ingredients "pear + tulsi + turmeric + black pepper."  See, Exhibit 1 to the Declaration of Donald Lockerbie III in Support of Motion to Dismiss Plaintiff's Amended Complaint (Dkt. No. 13-2)(" Lockerbie Decl."). For all these reasons the Vanilla Cases are factually inapposite and distinguishable from the case at bar.

Defendant next argues that no reasonable consumer could be deceived by the label claim because an examination of the ingredient list on the back side of the packaging reveals that the product contains natural flavor and is devoid of its

characterizing ingredient. That argument, however, was squarely rejected by the Ninth Circuit over a decade ago.

> The district court suggests that no reasonable consumer upon review of the package as a whole would conclude that Snacks contains juice from the actual and fruit-like substances displayed on the packaging particularly where the ingredients are specifically identified. We disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box. The ingredient list on the side of the box appears to comply with FDA regulations and certainly serves some purpose. We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception. Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging.

*Williams,* 552 F.3d 934, 939-40 (9th Cir. 2008).

Over the years, the *Gerber* decision was refined to take into account labeling that is clearly ambiguous. Under such circumstances it becomes incumbent upon the reasonable consumer to look elsewhere on the label for understanding. *McGinity v. P&G,* 69 F.4th 1093, 1098 (9th Cir. 2023). Significantly, however, reference to back label disclosures are only relevant when the statement on the front label is ambiguous. Otherwise, the mandate of *Gerber* applies. If it is deceptive, then "the presence of fine print revealing the truth is insufficient to dispel that deception." *See, Ebner v. Fresh, Inc.,* 838 F.3d 958, 966 (9th Cir. 2016).

As detailed above, there is nothing ambiguous about the representation at issue in the case at bar. Defendant Better Booch unequivocally states the Product is a Pear Kombucha leading a reasonable consumer to understand that the Product contains pear. To assuage any doubt the PDP then reaffirms pear as a principal ingredient listing it along with 3 others ("pear + tulsi + turmeric + black pepper").   Lockerbie Decl. Ex. 1.

---

Defendant's cases are factually inapposite. In *McGinity v. P&G*, 69 F.4th 1093 (9th Cir. 2023), plaintiff purchased "Pantene Pro-V Nature Fusion" shampoo. The products' front labels display the words "Nature Fusion" and an image of an avocado on a green leaf which plaintiff alleged to convey that the shampoo was natural despite containing non-natural and synthetic ingredients. The Court concluded that there is some ambiguity as to what "Nature Fusion" means in the context of its packaging. "Although the front label represents that something about the product bears a relationship to nature, the front label does not make any affirmative promise about what proportion of the ingredients are natural." *Id*. at 1098. Accordingly, "'Nature Fusion' could mean any of a number of things: that the products are made with a mixture of natural and synthetic ingredients, that the products are made with a mixture of different natural ingredients, or something else entirely." *Id.* In contrast to the case at bar, the term "Nature Fusion" is made up. Pear is not. There is no ambiguity that pear is a fruit. Moreover, any notion that it could be conceived as a flavor instead of an ingredient is dispelled by the fact it is separately labeled again with the 3 other ingredients included in the Product.

In *Moore v. Trader Joe's Co.*, 4 F.4th 874 (9th Cir. 2021), the 9th Circuit held that the label "100% New Zealand Manuka Honey" was not likely to deceive a reasonable consumer into believing that the product contained only honey from the Manuka flower. The court reasoned that there was "some ambiguity as to what 100% meant finding it could mean that "the Manuka flower was the only source of the honey, that the Manuka flower was the primary source of the honey, or that 100% of the honey was from New Zealand." *Id.* at 882. The Court determined that an average consumer of Manuka honey would likely know more than most about the production of the product and the impossibility of a honey that is 100% derived from Manuka flower nectar; that the inexpensive cost of Trader Joe's Manuka Honey would signal to a reasonable consumer that the product has a relatively lower concentration of honey derived from Manuka flower nectar; and that the label sticker saying "10+," which

represents the honey's rating on the UMF scale would put a reasonable consumer on notice that it must represent *something* about the product. None of the indicia present in *Moore* are present in the case at bar. Moreover, Kombucha is a healthful clean label product whose consumers are concerned with real ingredients, affirming the reasonable expectation that what is claimed to be in the product, will actually be in the product . ¶¶23, 24 30-35.

Finally, in *Steinberg v. Icelandic Provisions, Inc*, 2022 U.S. Dist. LEXIS 13478 (N.D. Cal. Jan. 25, 2022) the product was named "Icelandic Provisions." The PDP also stated "Traditional Icelandic Skyr." Plaintiff alleged these statements misleadingly conveyed the product was made in Iceland. Dismissing the complaint, the Court found the brand name "Icelandic Provisions" was not specific as to the place of production and "Traditional Icelandic Skyr" merely refer to a type of cultured dairy product, not where it was manufactured. Again, the case at bar is easily distinguishable. Pear, short and simple, is an ingredient. Any possible ambiguity is eliminated when it is repeated for the second time on the PDP and included with the 3 other ingredients in the Product.

Absent an ambiguity, the full force of *Gerber* and its long line of progeny apply.  Judge Curiel's holding in *Ruiz v. Celsius Holdings*, 2021 U.S. Dist. LEXIS 235986 (S.D. Cal. July 27, 2021) is directly on point. The facts and allegations are nearly ***identical*** to those levied in the case at bar. Finding Plaintiffs allegations similar to those in *Williams*, the Court opined:

> Plaintiffs maintain here that the front of the packaging includes a name and picture of fruit, which plausibly suggests that a reasonable consumer may be deceived into thinking the beverage contains fruit. Like the Ninth Circuit found in *Williams*, a reasonable consumer might not "look beyond misleading representations on the front of the [can] to discover the truth from the ingredient list in small print" on the back of the can. *Id.* at 939….. "Plaintiffs have alleged facts suggesting that consumers rely on front-of-package representations to make their purchasing decisions, that some seek out products that

1
2
3
4
5

contain "real" ingredients, and that competing products specifically identify if they are fruit "flavored," [] bolstering their allegation that a reasonable consumer would be deceived. Regardless of whether Plaintiffs will succeed in convincing a factfinder, "[t]he facts of this case . . . do not amount to the rare situation in which granting a motion to dismiss is appropriate" on the issue of whether a business practice is deceptive to a reasonable consumer. *Williams*, 552 F.3d at 938-39.

6
7
8

Based on the foregoing, Plaintiff's claims have been adequately pled and should be sustained.

9
10

### D.  PLAINTIFF'S UCL UNLAWFUL CLAIM IS NOT IMPLIEDLY PREEMPTED

11
12
13
14

Defendant argues that Plaintiff's UCL unlawful claim is impliedly preempted because California's Sherman Law is not a pre-existing, traditional, state tort law claims, but rather post-dates and is entirely dependent upon the FDCA, and therefore impliedly preempted. They are wrong.

15
16
17
18
19
20
21
22
23

The FDCA expressly preempts any inconsistent state law. *See* 21 U.S.C. § 343-1(a). Under *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 353 (2001), a plaintiff's claims are preempted if they attempt to privately enforce FDA labeling regulations. *See* 531 U.S. at 350. To avoid preemption, a state law claim based on a federal labelling requirement must thread a "narrow gap": "The plaintiff must be suing for conduct that *violates* the FDCA (or else his claim is expressly preempted by [21 U.S.C. § 343-1(a)]), but the plaintiff must not be suing *because* the conduct violates the FDCA (such a claim would be impliedly preempted under *Buckman*)." *Perez v. Nidek Co.*, 711 F.3d 1109, 1120 (9th Cir. 2013) (emphasis in original)

24
25
26
27
28

District courts have consistently found that state-law food-labeling claims brought under California's Sherman Law thread this narrow gap and aren't preempted. *See, e.g., Sandoval v. PharmaCare US, Inc.*, 145 F. Supp. 3d 986, 995 (S.D. Cal. 2015) (collecting cases); *Vassigh v. Bai Brands LLC*, 2015 U.S. Dist. LEXIS 90675 (N.D. Cal. July 13, 2015) (collecting cases); *Hesano v. Iovate Health*

*Scis., Inc.*, 2014 U.S. Dist. LEXIS 5924 at *18 (S.D. Cal. Jan. 15, 2014) ("The FDCA . . . does not preclude states from adopting their own parallel laws and adopting a different mechanism for enforcing those laws."); *Trazo v. Nestlé USA, Inc.*, 2013 U.S. Dist. LEXIS 113534, at *21 (N.D. Cal. Aug. 9, 2013) ("While state law tort actions cannot be used to improperly intrude on the FDA's exclusive jurisdiction, Plaintiffs here sue under state law—namely, the Sherman Law, UCL, FAL, and CLRA—and so their claims are not impliedly preempted").  The case at bar traverses this narrow gap and fits squarely within this legal framework. Plaintiff's unlawful UCL claim predicated on the violation of California's Sherman Law therefore should not be preempted.

Defendant relies on two cases to support its preemption argument.   The first, *Nexus Pharm., Inc. v. Cent. Admixture Pharm. Servs.*, 48 F.4th 1040  (9th Cir. 2022) which adopts the basic proposition announced in *Buckman*, that claims which "exist only because of the FDCA's requirements" are preempted. *Id.* at 1044. Where a "purported state law violation is of a law that says in substance "comply with the FDCA," [it is] not a traditional common law tort" and therefore preempted. *Id.* at 1050. Second, Defendant relies on *Chong v. Kind LLC*, 585 F. Supp. 3d 1215, 1219-20 (N.D. Cal. 2022) which held, "[t]o navigate the "narrow gap" for non-preempted claims, plaintiffs must "rely on traditional state tort law which had predated the federal enactments in question." The Court found that a UCL claim predicated on a violation of the Sherman Law was preempted because the law "post-dates and is entirely dependent upon the FDCA." *Id.* at 1219.

The conclusion reached in *Chong*, however, is a minority opinion, and respectfully in err. *See e.g.*, *Brown v. Van's Int'l Foods, Inc.*, 2022 U.S. Dist. LEXIS 84477 at *22-23 (N.D. Cal. May 10, 2022) ("respectfully disagree[ing] with *Chong*" finding such claims not impliedly preempted noting that the *Chong* court's reading of *Buckman* was too broad, especially in light of "the strong presumption against federal preemption in the area of marketing food"); *Vassigh v. Bai Brands LLC*,  2015

U.S. Dist. LEXIS at * 12 (N.D. Cal. July 13, 2015)( "[C]ourts in this District ... routinely reject the argument that the [Supreme] Court's reasoning in *Buckman* justifies preemption of food labeling claims under the Sherman Law") (collecting cases); *Roffman v. REBBL, Inc.*, 2023 U.S. Dist. LEXIS 16166, at *11-13 (N.D. Cal. Jan. 31, 2023); *Rodriguez v. Target Corp.*, 2022 U.S. Dist. LEXIS 233767, at *10-11 (S.D.N.Y. Dec. 30, 2022)( "Plaintiffs' UCL claim under the UCL's "unlawful prong" is not impliedly preempted to the extent it rests on violations of California law -- including the FAL, CLRA, and California's Sherman Law which incorporates and mirrors much of the FDC."); *Pino v. Birch Benders, LLC*, 2022 U.S. Dist. LEXIS 180804 at * 11(N.D. Cal. Oct. 3, 2022) ("The Court joins these courts and finds Plaintiffs'… claims are not barred by implied preemption."); *Roffman v. Perfect Bar, LLC*, 2022 U.S. Dist. LEXIS 159762 (N.D. Cal. Sept. 2, 2022); *Swartz v. Dave's Killed Bread, Inc*., 2023 U.S. Dist. LEXIS 41302, at *6-7 (N.D. Cal. Jan. 9, 2023).

The same should result here.

## E. PLAINITFF'S EQUITABLE CLAIMS SHOULD BE SUSTAINED AT THIS JUNCTURE OF THE LITIGATION

Defendant relies on *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) for the proposition that Plaintiff cannot seek equitable relief under California's consumer protection statutes without establishing that she lacks an adequate remedy at law.

*Sonner*, however, focused on the adequacy of money damages in remedying past harms and courts in this Circuit have since found an exception when plaintiffs show that legal remedies will not adequately remedy future harm. *See, Mier v. CVS Pharmacy, Inc.*, 2021 U.S. Dist. LEXIS 76737 (C.D. Cal. Mar. 22, 2021) (allowing a plaintiff to seek both monetary damages and an injunction premised on future harm under the UCL).

Plaintiff acknowledges that Courts in the Ninth Circuit have split on the issue of "how exacting of a standard *Sonner* imposes on plaintiffs who plead claims for equitable and legal remedies at the pleading stage." *Jeong v. Nexo Fin. LLC*, 2022 U.S. Dist. LEXIS 10089 at * 92 (N.D. Cal. Jan. 19, 2022). Some courts reject the proposition that plaintiffs are "not required to make a binding election of remedies at" an early stage of litigation finding it not an election of remedies issue but whether equitable remedies are available to Plaintiffs at all." *In re MacBook Keyboard Litig.*, 2020 U.S. Dist. LEXIS 190508 at * 9 (N.D. Cal. Oct. 13, 2020). Others hold that "*Sonner* has limited applicability to the pleading stage because it pertained to circumstances in which a plaintiff dropped all damages claims on the eve of trial." *Jeong*, 2022 U.S. Dist. LEXIS 10089; *Nacarino v. Chobani, LLC*, 2022 U.S. Dist. LEXIS 20671 (N.D. Cal. Feb. 4, 2022).

In *Sinatro v. Barilla Am., Inc.*, 635 F. Supp. 3d 858, 881-82 (N.D. Cal. 2022) the Court found *Sonner* does not impose strict requirements at the pleading stage because plaintiffs "may allege claims in the alternative at the pleading stage," and because the statutes of limitation may preclude damages for certain periods of time, and equitable relief would be the only available remedy for certain timespans."

At this stage, Plaintiff is should be allowed to plead in the alternative.  "Nothing in *Sonner* precludes plaintiffs from [seeking equitable relief] in the alternative to remedies at law." *Cepelak v. HP Inc.*, 2021 U.S. Dist. LEXIS 221360 (N.D. Cal. Nov. 15, 2021); *accord Jeong v. Nexo Fin. LLC*, 2022 U.S. Dist. LEXIS 10089 at * 94 (N.D. Cal. Jan 19, 2022) ("There is no binding precedent that holds that pleading equitable restitution in the alternative is improper."); *Warren v. Whole Foods Mkt. Cal., Inc.*, 2022 U.S. Dist. LEXIS 120865 at * 28 (N.D. Cal. July 8, 2022) (The plaintiff "is not barred by *Sonner* . . . from pursuing alternative remedies at this early stage of the suit."); *Ablaza v. Sanofi-Aventis United States LLC*, 2023 U.S. Dist. LEXIS 68391 at *5-6 (N.D. Cal. Apr. 13, 2023)(finding it sufficient at this stage of

the litigation to simply allege damages "would not be adequate to address the injury suffered by Plaintiffs").

The Court's decision in *Anderberg v. Hain Celestial Grp., Inc,* 2023 U.S. Dist. LEXIS 14588, at *22-24 (S.D. Cal. Jan. 26, 2023) is instructive. Like here, Hain argued that "[s]everal of Plaintiff's claims permit her to recover money damages, and those damages would adequately compensate her for her alleged injury—i.e., the supposed 'price premium' she allegedly paid due to [Defendant's] use of the phrase 'Reef Friendly' on the labeling . . . ." Thus, Plaintiff is barred from seeking equitable relief. *Id* at 22. Like here, the gravamen of plaintiffs' claim was that Defendant's marketing and advertising of the Products misleads consumers and "[t]he injury to consumers cannot be fully compensated through an award of monetary damages because the Products as currently labeled are deceptive and misleading and injunctive relief is necessary to put a stop to the continuing harm." *Id.* at 22-23. In these circumstances a legal remedy is not adequate. Considering these positions, the Court found "Plaintiff may lack an adequate legal remedy for future harm such that barring equitable remedies is unjustified at this time." *Id.* at 23.

These rulings are also consistent with Federal Rule of Civil Procedure 8 which allows for pleading in the alternative. Specifically, Rule 8 states that a claim for relief must contain "a demand for relief sought, *which may include relief in the alternative or different types of relief.*" Fed. R. Civ. P. 8(a)(3) (emphasis added).

Therefore, *Sonner* does not constitute controlling authority prohibiting a federal court plaintiff from *pleading* alternative remedies, and Plaintiff should not have to choose her claim or remedy at the pleading stage.

Moreover, even if Plaintiff is required to plead that damages are inadequate, Plaintiff has sufficiently done so. Damages are not an adequate substitute to prevent ongoing and future unlawful conduct. The Complaint alleges that Defendant's conduct, if unchecked, will continue to damage Plaintiff and members of the proposed Class because they cannot rely on Defendant's marketing as truthful, non-deceptive and

lawful absent an injunction.  Damages also are not adequate to compensate for a UCL claim because both restitution and damages may be necessary. Under the UCL, which allows only for restitution, Plaintiff may state a claim merely by showing that Defendant's practice was unlawful. To state a claim under the CLRA, Plaintiff must also prove other factors, such as likelihood of deception via an omissions theory.  If Plaintiff fails to prove deception but still establishes unlawfulness, restitution would be the only available remedy.[6]

## F.    PLAINTIFF IS ENTITLED TO INJUNCTIVE RELIEF

To seek injunctive relief, a consumer needs to allege that she (1) cannot "rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to," or (2) might purchase the product again, "as she may reasonably, but incorrectly, assume the product was improved." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969-70 (9th Cir. 2018).

Even if it were proper to dismiss *some* kinds of equitable claims in cases where a plaintiff also seeks damages, there is no automatic presumption that the existence of legal remedies necessarily bars *all* equitable relief.  Indeed, Plaintiff is entitled to plead a request for *prospective* injunctive relief, which is not foreclosed by a damages claim.  "Retrospective damages are not an adequate remedy for the prospective harm that injunctions are designed to prevent," and "*Sonner* does not bar consumer fraud claims that seek injunctive relief where the plaintiff, as here, alleges future harms." *Nacarino, supra,* 2021 U.S. Dist. LEXIS 149153, at *35; *See also Andino v. Apple,*

---

[6] To the extent Plaintiff's allegations are not clear, Plaintiff respectfully requests leave to amend. *Norman v. Gerber Prods. Co.*, 2023 U.S. Dist. LEXIS 3834, at *6-7 (N.D. Cal. Jan. 6, 2023)( Because it is possible that Plaintiff could plead that she lacks an adequate remedy at law, the Court grants Plaintiff leave to amend.); *Vance v. Church & Dwight Co.*, 2023 U.S. Dist. LEXIS 53980, at *13-14 (E.D. Cal. Mar. 29, 2023)(same)

*Inc.*, 2021 U.S. Dist. LEXIS 76011, at *5 (E.D. Cal. Apr. 20, 2021) (holding that "[m]oney damages are an inadequate remedy for future harm, as they will not prevent Defendant from continuing the allegedly deceptive practice. Plaintiff has standing to seek injunctive relief. As the Court noted in *Ruiz, supra*, "because Plaintiffs are previously deceived consumers who would purchase Defendant's product in the future if the beverages were not misleadingly marketed, they have alleged standing to seek an injunction." *Ruiz,* 2021 U.S. Dist. LEXIS 235986, at *8, citing *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969-71 (9th Cir. 2018); *Allred v. Kellogg Co.*, 2018 U.S. Dist. LEXIS 38576, at *20 (S.D. Cal. Feb. 23, 2018) (plaintiff pled future injury by stating, "Plaintiffs intend to, desire to, and will purchase the Product again when they can do so with the assurance that the Product's label . . . is lawful and consistent with the Product's ingredients… [t]hus, [] still faces future injury because they will not be able to rely on Kellogg's claims about its product's ingredients."); *Campbell v. Freshbev LLC*, 322 F. Supp. 3d 330, 338 (E.D.N.Y. 2018) ("The Court finds *Davidson* persuasive…. [P]laintiffs do have standing so long as they plead a future desire to buy the product").  Similarly, here Plaintiff alleged that should she have the occasion to believe that Defendant's marketing and labeling is truthful, non-misleading, and lawful in the future she would again purchase Better Booch's Product. ¶19. As such, the result should be the same.

1
2

**III.    CONCLUSION**

3

For the foregoing reasons, Plaintiff respectfully requests that this Court deny

4

Defendant's Motion in its entirety.  As this is the Court's first consideration of

5

Plaintiff's pleading, to the extent that the Complaint is deficient in any respect,

6

Plaintiff requests leave to amend.

7
8
9
10

DATED: March 7, 2022                    Respectfully submitted,

11
12
13
14

_____
Michael D. Braun

15

**KUZYK LAW, LLP**

16

2121 Avenue of the Stars, Ste. 800
Los Angeles, California 90067

17

Telephone:  (213) 401-4100

18

Email:  mdb@kuzykclassactions.com

19
20
21
22
23
24
25
26
27
28